UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
REYNA RODRIGUEZ                             :          **OPINION**
                                            :
            Plaintiff,                      :          03 CV 4744 (RLC)
                                            :
       -against-                            :
                                            :
JO ANNE BARNHART,                           :
Commissioner of Social Security             :
                                            :
            Defendant.                      :
------------------------------------------------------X


APPEARANCES

BINDER AND BINDER, P.C.
215 Park Avenue South, 6th Floor
New York, New York 10003

                    CHARLES E. BINDER
                    Of Counsel

Attorney for the Plaintiff


MICHAEL J. GARCIA
United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007

                    JOHN E. GURA, JR.
                    Of Counsel

Attorney for the Defendant



ROBERT L. CARTER, District Judge

Before the court is plaintiff's motion for judgment on the pleadings, to remand the plaintiff's matter for further evidentiary proceedings. Also before the court is defendant's cross-motion for judgment on the pleadings affirming the defendant's administrative decision and dismissing the complaint.

BACKGROUND

Reyna Rodriguez ("plaintiff") filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act") on November 20, 1997, in which she alleged that she was disabled due to depression. Her application was denied after an initial review. Plaintiff then filed a second application for SSI benefits on August 31, 1998. This application was denied and this denial was affirmed upon reconsideration. Plaintiff then requested a hearing, which was held on October 6, 1999. Administrative Law Judge Robin J. Arzt (the "ALJ"), before whom plaintiff appeared with her attorney, considered the case de novo and, on September 17, 2000 found that plaintiff was not disabled and therefore ineligible for SSI benifits. The ALJ's decision became the final decision of Jo Anne B. Barnhart, Commissioner of Social Security (the "Commissioner") on May 2, 2003 when the Appeals Council denied plaintiff's request for review. The instant action against the Commissioner followed.

The court adopts the facts contained in plaintiff's brief, Mem. of Law in Supp. of Pls. Cross-motion for J. on the Pleadings 1–12 (with exceptions, as noted herein).

DISCUSSION

The Commissioner has promulgated a sequential five-step evaluation for adjudicating disability claims.[1] The burden of proof is upon the claimant for the first four steps, but shifts to the Commissioner at the last step. See Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 642 (2d Cir. 1983). In the case at bar, the ALJ found that plaintiff had satisfied the first step in the analysis, she had not worked since she filed an application for SSI on November 20, 1997. Administrative Transcript certified by the Office of Hearings and Appeals, Social Security Administration on October 8, 2003 (hereinafter "Tr.") at 20. Proceeding to the second step, the ALJ found that neither of plaintiffs alleged disabling conditions, dysthymia and anemia, considered separately or in conjunction, reached the level of severity required by the regulations.[2] Consequently, plaintiff was found not disabled under the Act[3] and her claim was denied.

The issue at hand is whether there is substantial evidence to support the Commissioner's decision. Substantial evidence is "more than a mere scintilla. It means

---

[1] "The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) citing Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 642 (2d Cir. 1983).

[2] "What we mean by a not severe impairment(s) in an adult. (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 416.921 (2005).

[3] See 42 U.S.C. § 423(d) (2005); 42 U.S.C. § 1382c(a)(3) (2005) (defining disability).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17 (1938). If there is substantial evidence the decision of the Commissioner must stand because according to the Act, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ." 42 U.S.C.A. § 405(g). However, the evidence in favor of the Commissioner's decision must not to be considered in a vacuum; the court is to review the record as a whole. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) citing State of New York v. Secretary of Health and Human Services, 903 F.2d 122 (2d Cir. 1990). The court is to examine not only the evidence supporting the Commissioner's decision, but evidence that would militate against the Commissioner as well. Alston v. Sullivan, 904 F.2d 122, 126. In spite of the foregoing, in its review, the court is not to substitute its own judgment for that of the fact finder; where there is evidence to support the Commissioner or the claimant, deference is to be paid to the decision of the Commissioner. Id.

The ALJ's decision is supported by the findings of Dr. Renzullo, plaintiff's long-time treating physician. Specifically, in October 1998, Dr. Renzullo indicated that an examination revealed that plaintiff's attention, concentration, memory and insight were all intact. Tr. 188. Moreover, Dr. Renzullo reported that plaintiff was functioning as a housewife and had no limitations in the following areas: understanding and memory; sustained concentration and persistence, including the ability to follow simple or detailed instructions; social interaction, including accepting supervision and getting along appropriately with coworkers; or adaptation, including responding appropriately to

3

changes in the work setting. Tr. 190. In addition, Dr. Renzullo indicated that plaintiff had no limitations in her ability to travel by and use public transportation. Id.

Plaintiff argues that the ALJ erred in finding that plaintiff's disability was not severe because Dr. Renzullo has repeatedly diagnosed plaintiff with a dysthemic disorder and depression. However, in making this argument, plaintiff confuses the presence of a diagnosis of a medical condition with the functional limitations that it imposes. For the purposes of determining disability in the Social Security context, plaintiff bears the initial burden of showing that her impairment caused functional limitations that precluded her from engaging in any substantial gainful activity and, that as a consequence, she is entitled to benefits. Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983). Simply because Dr. Renzullo has diagnosed plaintiff with dysthemic disorder and depression does not mean that the plaintiff has a severe impairment. The true test is whether those conditions create the necessary functional limitations. Id. In the instant matter, plaintiff's longtime treating physician reported that plaintiff's ability to perform basic work activities was not impaired. Tr. 188–190. Plaintiff does not present evidence that would tend to prove the existence of a severe condition. Thus, the ALJ did not err in relying on Dr. Renzullos's analysis.

Plaintiff's assertion that the ALJ was obligated to further develop the record is unavailing. In making a determination, an ALJ must attempt to fill any clear gaps in the record. Rosa v. Callahan 168 F.3d 72 (2d Cir. 1999) (holding that an ALJ erred in substituting her own medical judgment for that of a claimant's treating physician). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to

seek additional information in advance of rejecting a benefits claim." Id. at 79 n.5. Here, there were no clear gaps in the record and plaintiff fails to identify any additional evidence that the ALJ failed to obtain.

Plaintiff also argues that the ALJ improperly disregarded Dr. Renzullo's comment, found in a February 1998 clinic note, stating that plaintiff was "unable to work at present." Tr. 169. However, as the ALJ notes, Dr. Renzullo's statement is contradicted by her subsequent examination findings and a functional assessment, in which she reported that plaintiff's condition was not severe. Tr. 23, 188, 190. Dr. Renzullo cast further doubt on the severity of plaintiff's condition by remarking in a June 1999 report that "plaintiff has been advised that she can learn English to start and then go on to some vocational training. However, [plaintiff] continues to fall back on wanting to apply for SSI." Tr. 400. The record shows that the ALJ considered and assigned the appropriate weight to Dr. Renzullo's February 1998 comment.[4]

The ALJ properly relied on the functional assessment of Dr. Renzullo, who treated plaintiff's medical condition for at least five years, over opinions offered by other examining sources, to the extent that they provided differing opinions.[5] However, for the most part, the examiners concurred with Dr. Renzullo. For example, Dr. de la Chapelle interviewed plaintiff on January 16, 1998, and found that plaintiff has "a satisfactory ability to understand, carry out and remember instructions, and a satisfactory ability to respond appropriately to supervision, coworkers and pressures in a work setting." Tr.

---

[4] Dr. Renzullo's February 1998 comment does not trigger the ALJ's obligation to further develop the record because unlike Rosa v. Callahan,168 F.3d 72 (2d Cir. 1999), there is a complete record with ample evidence to support the ALJ's conclusion, including, reports in which the very same doctor subsequently recants her diagnosis of 'unable to work' and suggests that plaintiff attend vocational training. Tr. 400.
[5] See 20 C.F.R. §416.927(d)(2)(I) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.")

5

168. Dr. Christiana Bortuzzo, who conducted a physical examination of the plaintiff on January 26, 1999, also found plaintiff's condition suitable for engaging in work activities. Dr. Buztuzzo found that "the [plaintiff] appears to have no limitation for carrying, lifting, pushing, bending, walking standing or sitting. . .[h]er prognosis is medically good. . ." Tr. 216.

The ALJ was within her discretion in discounting the opinions of the remaining consulting physicians. Three consultative physicians gave opinions that might be viewed as inconsistent with the decision of the ALJ. The first, Dr. Nam, gave plaintiff a physical examination on October 6, 1998. Dr. Nam noted that plaintiff's physical indicators are all normal, but that he could not determine her ability to work based on his examination. Tr. 182–3. Without providing a reason for his conclusion, Dr. Nam then assigned plaintiff a "poor" prognosis. Tr. 183. The second, Dr. Robert Cicarell, examined plaintiff on January 25, 1999. Dr. Cicarell found that plaintiff's mood was depressed, her affect was depressed, her memory was fair, her attention was impaired and that her judgment was fair. Tr. 212–213. Furthermore, "plaintiff had a limited ability to understand, carry out and remember instructions in a work setting." Tr. 213

The ALJ was warranted in discounting Dr. Nam's analysis; the record shows no evidence of what Dr. Nam relied upon in forming his opinion. The ALJ's decision to disregard both Dr. Nam's and Dr. Cicarell's conclusions are even more compelling in light of the findings of Dr. Tapia, who examined the plaintiff on October 9, 1998, just three days after Dr. Nam's examination. Dr. Tapia found that plaintiff's "[a]ttention [and] concentration were adequate. Insight and judgment were fair." Tr. 197. Dr. Tapia

6

continues, "patient has a good ability to respond appropriately to supervision and coworkers in a work setting." Id.

The ALJ also properly discounted Dr. Di Dio's opinion concerning plaintiff's overall functioning. Tr. 26. Based on one examination, Dr. Di Dio opined that plaintiff was moderately to markedly limited in her ability to deal with social interactions, use public transportation and concentrate. Tr. 443–45. Dr. Di Dio offered a GAF score[6] of 45, which is indicative of serious conditions. Tr. 440. The ALJ noted, however, that Dr. Renzullo's findings directly contradicted those of Dr. Di Dio. Tr. 26. In particular, Dr. Di Dio's conclusions contradict the previously mentioned report of Dr. Renzullo which states that plaintiff's ability to concentrate, interact socially and use public transportation were unimpaired by her mental condition. Tr. 188, 190. Likewise, Dr. Di Dio's low GAF score was contradicted by an assessment from Fordham-Tremont Community Mental Health Center, which indicated that one month prior to Dr. Di Dio's assessment, plaintiff's GAF score was 60, indicative of moderate symptoms. By affirming the decision of the ALJ, the Commissioner decided that the analyses of Dr. Renzullo and plaintiff's treating sources were more credible than Dr. Di Dio's report. The Commissioner had full authority to make this decision, as "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971).

---

[6] The Global Assessment of Functioning ("GAF") is a 100-point scale used to rate overall psychological functioning. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV"). Scores between forty-one and fifty reflect serious symptoms or a serious impairment of social, occupational or school (e.g., flat affect and circumstantial speech, occasional panic attacks) or serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job). GAF scores of fifty-one to sixty indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. See DSM-IV at 32–34.

Plaintiff's ancillary argument, that the ALJ failed to properly evaluate the plaintiff's credibility, is without merit. The ALJ's ruling is sufficiently clear to allow subsequent reviewers to asses the substantiality of the evidence upon which the determination is based. The ALJ's decisions shows that she considered plaintiff's testimony regarding her alleged symptoms, but that they were not supported by the evidence of record. For example, although plaintiff testified that medication did not help her condition, records from her treating clinic and consulting examiners showed that medication helped control her symptoms and did not result in any side effects. Tr. 21–22, 212, 338, 352, 358, 380, 390, 395. "The credibility of witnesses is a matter within the sole province of the hearing examiner to determine, and where, as here, there is evidence to support the examiner's determination, it would be improper for a reviewing court to parse the cold record for a different result." Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y. 1985) (Edelstein, J.) (internal quotations and citations omitted). The court finds no error in the ALJ's determination of the plaintiff's credibility.

In sum, the ALJ's decision, later affirmed by the Commissioner, was properly grounded in evidence gleaned from the assessments of plaintiff's regular physician and several other examiners. The ALJ acknowledged certain dissenting viewpoints in her decision, but acting completely within the law and the scope of her discretion, assigned greater weight to the analyses of plaintiff's regular physicians. This case is one in which there is substantial evidence supporting the ALJ and a mere modicum of evidence supporting the claimant. As the precedent dictates, we must therefore find in favor of the fact finder. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

CONCLUSION

Plaintiff's motion for judgment on the pleadings, to remand the plaintiff's matter for further evidentiary proceedings is DENIED and defendant's cross-motion for judgment on the pleadings affirming the defendant's decision and dismissing the complaint is GRANTED. The clerk of the court is directed to enter final judgment.

**IT IS SO ORDERED**

DATED: New York, New York
April 5, 2006

_____
**ROBERT L. CARTER**
**U.S.D.J.**

COPIES MAILED